■ In the Matter of Louis G. BIANCHI, INC., Respondent, v CITY OF TROY et al., Respondents, and CALLANAN INDUSTRIES, INC., Appellant. (Proceeding No. 1.) In the Matter of CALLANAN INDUSTRIES, INC., Appellant, v CITY OF TROY et al., Respondents. (Proceeding No. 2.) — Appeal from a judgment of the Supreme Court at Special Term (Prior, Jr., J.), entered November 17, 1982 in Albany County, which, in proceedings pursuant to CPLR article 78, (1) compelled respondent City of Troy to execute a public works contract previously awarded to respondent Louis G. Bianchi, Inc., and (2) dismissed the petition of Callanan Industries, Inc., to vacate the award of that contract. When respondent Louis G. Bianchi, Inc., was awarded a city-wide street paving contract by the City of Troy, petitioner Callanan Industries, Inc., sought to have it set aside on the ground that subdivision 1 of section 103 of the General Municipal Law, which requires that such contracts be conferred upon the "lowest responsible bidder", had been violated. Callanan claims to have been that bidder. Bianchi countered by instituting a proceeding to compel the city to execute the necessary contract documents. The proceedings were consolidated; Special Term found that the contract was legally Bianchi's and this appeal ensued. Although the street paving has been completed, this suit retains its vitality for Callanan has standing to sue to ensure that the preparation of bid proposals and the awarding of public works contracts, matters of acknowledged public interest, are performed in accordance with the General Municipal Law. The circumstance that a direct remedy is unavailable to Callanan is no impediment (*Elia Bldg. Co. v New York State Urban Dev. Corp.,* 54 AD2d 337, 341). This controversy focuses on the city's proposals for bids. The initial proposal, dated April 23, 1982, stated that bids would be accepted for alternate contracts covering paving with either asphalt (Contract No. 3) or concrete (Contract No. 4). Asphaltic paving is said to be less expensive than concrete paving, but presents disadvantages in terms of durability and repair; to compensate for asphalt's lesser cost, the proposal indicated that all bids for Contract No. 3 would be multiplied by a factor of 2.6. A comparison of the bids submitted for Contract No. 4 would then be made and the paving contract would be given to the contractor submitting the lowest figure, whether it be an adjusted Contract No. 3 bid or a Contract No. 4 bid. The proposal made it clear, however, that only one of the contracts would be awarded. On May 5, 1982, the city revised its bid proposal by removing the 2.6 factor for Contract No. 3 bids and adding that the determination of the award between asphalt paving or concrete paving would be "based on the actual 'Low Bid' as submitted on the Proposal Sheets". Bianchi submitted a bid of $367,948 for Contract No. 3 and $337,658 for Contract No. 4. Callanan bid $298,450 for Contract No. 3 and $419,995 for Contract No. 4. The city, which had the right to issue proposals in the alternative (*Matter of Fonseca v Board of Educ.,* 58 Misc 2d 223, 226), opted for concrete paving and awarded Contract No. 4 to Bianchi, the undisputed low bidder on that contract. Callanan contends that

the language of the May 5 revised proposal for bids bound the city to accept the lowest bid offered on either of the two contracts, thereby mandating acceptance of Callanan's bid for Contract No. 3. Though inartfully drawn, the revision did not nullify the city's ability to choose; it simply removed the 2.6 factor in an effort to provide greater latitude in the decision-making process. That Callanan was cognizant of the city's intention to elect between asphalt and concrete before ascertaining the lowest bid is apparent from the fact that Callanan submitted two bids and that its bid on Contract No. 4 was over $120,000 greater than its Contract No. 3 bid. Had Callanan actually believed the bottommost figure on either contract would prevail, two different bids were not only unnecessary, but inconsistent; no useful purpose was served by overbidding itself. This fact, considered together with Callanan's admitted awareness of the contents of the initial bid proposal and the total absence of any fraud or collusion, justified the conclusion that the award was proper. The city's decision to pave its streets with concrete rather than asphalt was a comprehensible policy decision, not to be disturbed on review (*Matter of Delta Chem. Mfg. Co. v Department of Gen. Servs. of City of N. Y.*, 81 AD2d 507, 508). Judgment affirmed, with one bill of costs to respondents Louis G. Bianchi, Inc., and City of Troy. Kane, J. P., Main, Mikoll, Yesawich, Jr., and Levine, JJ., concur.